**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED
NOV 2 3 2005
Michael N. Milby, Clerk

| | | |
|---|---|---|
| DAVID RICHARDSON, and BRAD THOMPSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HOME SHIELD OF TEXAS, INC., a Texas Corporation; AMERICAN HOME SHIELD CORPORATION, a Delaware Corporation; and SERVICEMASTER COMPANY, a Delaware Corporation<br><br>Defendants. | ) | Case No. ______________<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL<br><br>H 05 -4029 |

Plaintiffs David Richardson and Brad Thompson ("Plaintiffs"), by and through their attorneys, based on their individual experiences and the investigation of counsel, and upon information and belief, allege on behalf of themselves and the proposed Plaintiff Class defined herein, as follows:

## JURISDICTION

1. This Court has jurisdiction under 28 U.S.C. § 1332. The aggregated claims of the individual members of the proposed Plaintiff Class exceed the sum or value of $5,000,000 and more than two-thirds of the members of the proposed Plaintiff Class, on the one hand, and Defendants, on the other, are citizens of different states.

## VENUE

2. Venue is proper in this District under 28 U.S.C. § 1391 (b) and (c). A substantial part of the events and conduct giving rise to the obligations, liabilities, breaches, and/or violations of law complained of herein occurred in this District, and Defendants conduct business with consumers in this District.

## PARTIES

3. Plaintiff David Richardson is a resident of Manvel, Texas, located in the County of Harris, Texas.

4. Plaintiff Brad Thompson is a resident of Dallas, Texas, located in the County of Dallas, Texas.

5. Defendant American Home Shield Corporation ("AHS"), a wholly owned subsidiary of The ServiceMaster Company ("ServiceMaster"), is a Delaware corporation with its principal place of business located in Memphis, Tennessee. AHS may be served with process through its registered agent for service of process, C.T. Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929.

6. Defendant ServiceMaster is a Delaware corporation with its principal place of business located in Downers Grove, Illinois. ServiceMaster may be served with process through its registered agent for service of process, C.T. Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, Illinois 60604.

7. Defendant American Home Shield of Texas, Inc. ("AHS Texas"), one of 14 subsidiaries of AHS, is a Texas corporation with its principal place of business located in Memphis, Tennessee. AHS Texas may be served with process through its registered agent for service of process, C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

8. Plaintiffs bring this Class Action against AHS, ServiceMaster, and AHS Texas, and each of them, on behalf of themselves, and the proposed Plaintiff Class defined herein.

## AGENCY/AIDING AND ABETTING/CONSPIRACY

9. Plaintiffs are informed and believe, and on that basis allege, that at all times material herein, each Defendant was the principal, agent, servant, representative, employer, employee, partner, associate, and/or joint venturer of each of the other Defendants and, in doing the things herein alleged, was acting within the scope or course of such relationship, agency, employment, partnership, association, and/or joint venture with the permission and consent of the other co-Defendants.

10. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in perpetuating the wrongful acts against Plaintiffs and the proposed Plaintiff Class, as herein alleged. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of the wrongful acts and wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

11. Defendants, and each of them, conspired with each other and with others, to perpetuate the unlawful scheme on Plaintiffs and the proposed Plaintiff Class, as herein alleged. In doing so, each of the Defendants has performed acts and/or made statements in furtherance of the said conspiracy, while at all times acting within the scope and in furtherance of the conspiracy alleged in this Complaint, and with full knowledge of the goals of that conspiracy.

## FACTUAL ALLEGATIONS

12. ServiceMaster is a publicly-traded national service company, which posts revenues approximating $4 billion annually. ServiceMaster markets and sells its services - which include lawn care, landscape maintenance, home warranty, home inspection, plumbing, drain cleaning, heating, ventilation, air conditioning, and electrical services–to commercial and residential customers, through a network of wholly-owned subsidiaries.

13. American Home Shield Corporation ("AHS") is one of 26 wholly-owned subsidiaries in ServiceMaster's network. AHS, in turn, has 14 subsidiaries, including American Home Shield of Texas, Inc. ("AHS Texas").

14. Scott J. Cromie is an Executive Officer of ServiceMaster, and also is President and Chief Executive Officer of AHS.

15. ServiceMaster and AHS market, sell, issue, and service home warranty plans. A home warranty plan is a service contract. For an annual premium, a home warranty plan covers the repair or replacement of a home's mechanical systems and major built-in appliances, regardless of age, make, or model. Most frequently covered home warranty items include: plumbing systems, water heaters, heating systems, duct work, electrical systems, dishwashers, garbage disposals, ranges, ovens, and cook-tops, built-in microwave ovens, refrigerators, and air conditioning and/or cooling systems. AHS Texas, an AHS subsidiary, issues and services these home warranty plans in Texas.

16. AHS markets, sells, issues, and services its home warranty plans, in Texas and elsewhere, under the ServiceMaster and AHS brand names. In recent promotional and marketing materials, AHS describes itself as the "founder of the Home Warranty business in 1971," and emphasizes that its home warranties are "backed by" the financial strength of its parent company, ServiceMaster:

> “American Home Shield is part of ServiceMaster, a $4.2 billion international company with a simple philosophy: When the customer needs service, we make sure the customer gets service.”

17. An annual AHS home warranty plan costs approximately $500. In 2004, ServiceMaster and AHS reported annual revenues from home warranty plan sales totaling $487 million.

18. ServiceMaster and AHS rely heavily on real estate agents to sell their home warranty plans. The agent typically offers to include the price of a one-year AHS home warranty plan in the closing costs for the property. Homebuyers receive the home warranty plan after escrow closes.

19. ServiceMaster and AHS also market their home warranty plans through direct-to-consumer telemarketing, television, print, radio and web-based advertising, and direct mail solicitation. Renewal sales are also a significant source of revenues for AHS and ServiceMaster. Solicitations and promotional materials for warranty renewals are sent directly to the warranty plan holder. As with other promotional materials, recent solicitations "guarantee" that AHS will "pay for covered repairs and replacements of [the] home's major systems and appliances," and assure consumers that every AHS home warranty plan "is backed by" ServiceMaster, a $4.2 billion company.

20. As administered, the home warranty plans marketed, sold, and issued by ServiceMaster, AHS, and AHS Texas are illusory, unfair, and deceptive, because Defendants systematically delay, hinder, deny, and obstruct consumers from receiving service and/or making warranty claims. ServiceMaster and AHS have adopted policies and practices to delay service visits, to discourage its contractors from making covered repairs, and to fabricate reasons to deny claims. Defendants also employ uniform deceptions and pretexts to deny warranty service claims covered under their plans. Consumers are not informed and are unaware of Defendants' illusory, unfair, and deceptive policies and practices when they purchase, obtain, or receive an AHS home warranty plan.

**Defendants Employ Policies and Practices to Delay and Deny Warranty Service**

21. ServiceMaster and AHS represent that customers will receive prompt warranty service from a local, AHS affiliated contractor. As a matter of policy and practice, AHS home warranty plan holders are directed by ServiceMaster and AHS to report repair problems directly to AHS. AHS selects a local contractor from its network of AHS-affiliated contractors. Defendants advertise that, on weekdays, warranty plan holders wait no more than four hours to receive a call from a local contractor to schedule a service visit. On weekends and holidays, Defendants claim that plan holders will receive scheduled service visits within 48 hours. Defendants further state that emergency service repairs receive an immediate response from an AHS affiliated contractor.

22. Despite these representations, AHS home warranty plan holders routinely never receive service, or are required to wait several days during the week, and even longer on weekends, for an initial service call. Defendants often force warranty plan holders to wait several days–and sometimes weeks–for an initial service call. As a result, AHS home warranty plan holders are left for long periods of time without vital home systems such as heat, electricity, air conditioning, refrigeration, running water, operative toilets, or cooking or washing facilities.

23. Consumers are not informed and are unaware of Defendants' policies and practices to delay and deny warranty service when they purchase, obtain, or receive an AHS home warranty plan.

**Defendants Employ Practices and Policies to Dissuade AHS Affiliated Contractors from Making Warranty Repairs**

24. As a matter of practice and policy, ServiceMaster and AHS dissuade AHS affiliated contractors from making warranty repairs.

25. As a matter of practice and policy, ServiceMaster and AHS underpay AHS affiliated contractors with below-market reimbursement for repair services. As a result, consumers who contact AHS for warranty repairs receive service visits from predatory, AHS-affiliated contractors who have a common, financial incentive to deny coverage, and exact money from consumers by offering to perform "out-of-warranty" repairs at an additional expense.

26. As a matter of practice and policy, when an AHS-affiliated contractor arrives at the consumer's home to perform a service visit, the contractor demands payment of a pre-set AHS "service fee" in the amount of $35.00 to $50.00. The contractor then takes a cursory look at the service item, and informs the consumer that the warranty claim is denied, based on pre-textual grounds not clearly enumerated in Defendants' home warranty plans. Repair services are offered, if at all, only at an additional out-of-pocket expense to the consumer.

27. Consumers are not informed and are unaware of Defendants' policies and practices to dissuade AHS-affiliated contractors from making warranty repairs when they purchase, obtain, or receive an AHS home warranty plan.

**Defendants Fabricate Reasons And Use Pretexts To Deny Claims**

28. As a matter of policy and practice, ServiceMaster and AHS wrongfully and systematically encourage their affiliated contractors to use a variety of pretexts to deny claims.

29. As a matter of policy and practice, Defendants' agents and representatives routinely cite improper maintenance, or improper installation, to deny warranty claims. Defendants do so, moreover, despite representing in marketing and promotional materials that Defendants' home warranty plans cover the homeowner's major appliances and systems regardless of age, and without a pre-warranty home inspection. Defendants deny coverage on these bases even if the homeowner can prove that: (a) the appliance or system was professionally installed before the home warranty plan was purchased; (b) the appliance or system receives or has received routine servicing and maintenance; (c) the cited "defect" is not an item that the appliance or system manufacturer considers part of routine servicing and maintenance; or (d) the problem requiring repair is not attributable to the pre-textual reason cited by Defendants for denying coverage.

30. Consumers who contest Defendants' decision to deny warranty claims, must contact AHS representatives directly. As a matter of policy and practice, Defendants, through their representatives, uphold initial warranty claim denials even if the basis of the denial can be disproved by the homeowner, or the contractor's diagnosis of the problem is later determined to be wrong.

31. Consumers are not informed and are unaware of Defendants' deceptive policies and practices, or Defendants' pre-textual bases for denying warranty claims, when they purchase, obtain, or receive an AHS home warranty plan.

## PLAINTIFFS' EXPERIENCES

**A. Plaintiff Richardson**

32. Plaintiff David Richardson ("Mr. Richardson") received an AHS policy when he purchased his Manvel, Texas home in 2000. Plaintiff's AHS home warranty plan lists several covered systems and appliances, including Plaintiff's "Air Conditioning/Cooler" units. Mr. Richardson has renewed his policy, annually, and has paid Defendants a premium of approximately $500.00, each year, since 2000.

33. On August 14, 2005, while his AHS home warranty plan was in effect, the air conditioning unit located in the attic of Mr. Richardson's home stopped working. Mr. Richardson's wife immediately called AHS to report the problem.

34. Three days later, an AHS-affiliated contractor arrived at the Richardson home for a service visit. While inspecting and disassembling Mr. Richardson's air conditioning unit, the AHS-affiliated contractor made several calls to his office regarding the unit. After about five minutes, the contractor telephoned AHS and, after briefly speaking with persons whom Plaintiff is informed and believes to have been AHS representatives, the contractor put Mr. Richardson on the phone with AHS. The AHS representative advised Mr. Richardson that Plaintiff's claim for warranty repair service was denied, stating that rust on the coils and drip pan had caused the unit to fail, and that rust had developed on the unit because it had not been maintained. AHS specifically cited "lack of maintenance" as the basis for its denial of Plaintiff's warranty claim.

35. After hanging up with AHS, the contractor told Mr. Richardson that the unit needed to be replaced, and that the cost for replacement was about $13,000.00. The contractor then told Mr. Richardson that he would "cut [Plaintiff] a deal," and replace the unit for Mr. Richardson for approximately $8,500.00. Mr. Richardson declined, and paid the contractor his requested $45.00 AHS service visit fee.

36. The following day, August 18, 2005, Mr. Richardson had a non-AHS affiliated contractor inspect the air conditioning unit. The contractor did observe some rust on the unit, which was typical and not due to lack of maintenance. According to this second,

non-AHS affiliated contractor, the conditioning unit failed because of its age, and not due to the presence of rust on the unit.

37. Because AHS denied his claim for warranty service, Mr. Richardson hired the non-AHS affiliated contractor to replace the air conditioning unit, at an out-of-pocket cost of approximately $2,600.00.

**B. <u>Plaintiff Thompson</u>**

38. Plaintiff Brad Thompson purchased an AHS home warranty plan on or about March 22, 2005, when he bought his Dallas, Texas home. Mr. Thompson paid an annual premium of approximately $810.00 for his home warranty plan, which includes extended coverage for appliances and systems in his main residence, a small guest house, and additional warranty coverage for a garage door opener, a clothes washer and dryer, termite coverage, and multiple refrigerators.

39. On or about September 15, 2005, while his AHS home warranty plan was in effect, the refrigerator located in Mr. Thompson's guest house stopped working. Mr. Thompson immediately called AHS to report the problem and to request a service visit. The AHS representative at the call center refused to process Mr. Thompson's request for a service visit, stating that the guest house refrigerator was not a covered claim because the appliance was not located in Mr. Thompson's main residence. Mr. Thompson persisted, stating that his warranty plan covered multiple refrigerators, and extended to appliances in his guest house. Despite his persistence, AHS refused Mr. Thompson's warranty claim.

40. Following this denial, and not finding any provision in his AHS documents that prohibited moving appliances between his guest house and main house, Mr. Thompson moved the guest house refrigerator into his main residence. On or about October 4, 2005, Mr. Thompson called AHS to say that the refrigerator located in his main residence had stopped working, and to request a service visit. The AHS representative who took Mr. Thompson's call confirmed that his warranty plan extended to multiple refrigerators, and agreed to schedule a service visit.

41. Over the next several days, Mr. Thompson called AHS as well as the AHS-affiliated technician in an effort to schedule the requested service call.

42. On or about October 12, 2005–nearly a full month after the refrigerator had stopped working–an AHS technician arrived at Mr. Thompson's home to perform the requested service visit. After inspecting the unit, the technician told Mr. Thompson that the refrigerator had a faulty switch that needed to be replaced. The technician then advised Mr. Thompson that various parts needed be ordered and, after collecting his $50.00 service fee, the technician left Mr. Thompson's home promising to return at another time to replace the switch.

43. The next day, on or about October 13, 2005, AHS telephoned Mr. Thompson to say that his request for warranty repair/replacement was denied, because the refrigerator was not located in Mr. Thompson's guest house. Mr. Thompson explained to the AHS representative that his AHS home warranty plan was for multiple refrigerators, covered appliances in both his main house and his guest house, and that AHS had previously denied warranty coverage because the refrigerator was located in the guest house, despite the fact that Mr. Thompson has purchased, and paid for, warranty coverage in both his main and guest houses. To this, the AHS representative responded that Mr. Thompson's claim for warranty repair or replacement service was denied because the refrigerator was "the wrong size" for Mr. Thompson's main residence.

44. On or about October 28, 2005, Mr. Thompson received a telephone call from an AHS representative who called to check on the status of Mr. Thompson's claim. Mr. Thompson advised the phone representative that AHS had previously denied his claim for warranty service. After repeatedly inquiring whether Mr. Thompson had cancelled the service request, and after repeatedly being advised that the claim had not been cancelled but had been denied by AHS, the AHS representative abruptly ended the call.

45. To date, Defendants have failed to repair or replace Mr. Thompson's second refrigerator under Plaintiff's AHS home warranty plan.

## CLASS ACTION ALLEGATIONS

46. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

47. This suit is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and Rule 46 of the Texas Rules of Civil Procedure, on behalf of class of persons (the "Class") initially defined as follows:

> All persons who purchased or obtained an AHS home warranty plan in the State of Texas within three years of the filing of this Complaint.

48. Excluded from the Class are Defendants, any entity in which either Defendants have a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendants, anyone employed with Plaintiffs' counsel's firms, any judicial officer to whom this case is assigned, and his or her immediate family.

49. This action has been brought and may properly be maintained on behalf of the class proposed above under the criteria of Federal Rule of Civil Procedure Rule 23, and Rule 42 of the Texas Rules of Civil Procedure.

50. **Numerosity of the Class - Fed.R.Civ.P. 23(a)(1).** Members of the Class are so numerous that their individual joinder herein is impracticable. The plans cost Class Members, on average, approximately $500 annually. The precise number of Class Members and their addresses are unknown to Plaintiffs. They are readily ascertainable from Defendants' records, however. Class Members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

51. **Existence and Predominance of Common Questions of Law and Fact–FED. R. CIV. P. 23(a)(2), 23(b)(3).** Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class Members. These common legal and factual questions include:

a. Whether the coverage offered by Defendants' home warranty plans is illusory;

b. Whether Defendants have misrepresented the services that consumers receive under Defendants' home warranty plans;

c. Whether Defendants systematically delay home warranty plan service visits;

d. Whether Defendants systematically deny home warranty claims on pre-textual grounds;

e. Whether Defendants' affiliated contractors are encouraged to deny home warranty plan claims;

f. Whether Defendants' policies, practices and procedures dissuade their affiliated contractors from making home warranty plan repairs;

g. Whether Defendants adequately disclose and/or omit material facts concerning the limitations applicable to their home warranty plans;

h. Whether Defendants omit material facts concerning the attributes of their home warranty plans; and

i. Whether Defendants use unconscionable, deceptive, and/or unfair practices in the advertising, soliciting, providing, offering, distributing, sale, issuance, and/or servicing of Defendants' home warranty plans.

52. **Typicality–FED. R. CIV. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of Class Members because, among other things, Plaintiff purchased or otherwise obtained a home warranty plan from Defendants, experienced delays in service, and was denied coverage for repair and/or replacement service under the warranty.

53. **Adequacy–FED. R. CIV. P. 23(a)(4).** Each Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the class he seeks to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of members of the class will be fairly and adequately protected by Plaintiffs and their counsel.

54. **Superiority–FED. R. CIV. P. 23(b)(3).** The class action is superior to other available means for the fair and efficient adjudication of class members' claims. The damages or other financial detriment suffered by individual class and subclass members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

55. In the alternative, this action may properly be maintained as a class action, because:

(a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants; or

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class members as a whole.

## FIRST CAUSE OF ACTION

### (Common Plan Fraud and Deceit)

56. Plaintiffs, on behalf of themselves and the Class, incorporate by reference each allegation set forth above as if fully set forth herein, and allege as follows.

57. Although Defendants have charged and collected money for their home warranty plans from Plaintiffs and the members of the Class, Defendants have, at all relevant times herein, wrongfully: (a) represented that their home warranty plans have characteristics, benefits, and/or qualities that they do not have; (b) advertised, marketed, promoted, and sold their home warranty plans with the intent not to sell, issue, or service them as advertised; (c) represented that their home warranty plans confer or involve rights, remedies, or obligations which they do not have or involve; and/or (d) represented that their home warranty plans have been sold, issued, or serviced in accordance with a previous representation, when they have not.

58. The conduct of Defendants, and each of them, constitutes a fraud against Plaintiffs and the members of the Class. Defendants, and each of them, directly and through their agents, representatives, and employees, made false, deceptive, and/or fraudulent representations, concealments, and/or non-disclosures of material facts to Plaintiffs and the members of the Class, knowing that their representations, concealments, and non-disclosures were false, deceptive, and/or fraudulent, and with the intent to defraud and/or mislead Plaintiffs and the Class.

59. At the time said misrepresentations, concealments, and non-disclosures of material facts were made, Plaintiffs and the members of the Class were ignorant of their falsity, and believed them to be true. Plaintiffs and the members of the Class relied upon Defendants' misrepresentations, concealments, and omissions of material fact, in purchasing or obtaining home warranty plans from Defendants. As a result, Plaintiffs and the members of the Class sustained damages.

60. The misrepresentations, concealments, and omissions of material fact made to Plaintiffs and to the members of the Class by Defendants, and each of them, directly and through their agents, representatives, and employees, were uniform or substantially similar.

61. As a result of Defendants' wrongful conduct, as herein alleged, Plaintiffs and the members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to monies paid to Defendants, funds spent to mitigate economic losses, and other damages, all in an amount to be determined at trial.

62. The wrongful acts of Defendants, and each of them, were done maliciously, oppressively, and with intent to defraud and/or mislead Plaintiffs and the members of the Class, who therefore are entitled to, and seek, punitive and exemplary damages in amount to be ascertained according to proof, which is appropriate to punish and set an example of Defendants.

## SECOND CAUSE OF ACTION

**(Unjust Enrichment)**

63. Plaintiffs, on behalf of themselves and the Class, incorporate by reference each allegation set forth above as if fully set forth herein, and allege as follows.

64. Defendants have received, and continue to receive, a benefit at the expense of Plaintiffs and the members of the Class. Defendants have knowledge of this benefit.

65. Although Defendants have charged and collected money for their home warranty plans from Plaintiffs and the members of the Class, Defendants have, at all relevant times herein, wrongfully: (a) represented that their home warranty plans have characteristics, benefits, and/or qualities that they do not have; (b) advertised, marketed, promoted, and sold their home warranty plans with the intent not to sell, issue, or service them as advertised; (c) represented that their home warranty plans confer or involve rights, remedies, or obligations which they do not have or involve; and/or (d) represented that their home warranty plans have been sold, issued, or serviced in accordance with a previous representation, when they have not. Additionally, at all relevant times herein, Defendants have charged and collected

money from their home warranty plans from Plaintiffs and the Class despite having adopted policies, practices, and procedures that make it virtually impossible for these consumers to receive the repair or replacement services represented in their home warranty plans, and/or to make a claim for services under said plans. Defendants thus received benefits that they have unjustly retained at the expense of Plaintiffs and the Class.

66. Defendants were aware and had knowledge of the benefit they were receiving as a result of their unlawful, unfair, deceptive, and wrongful acts and omissions, as hereinabove alleged, and have enjoyed the benefit of their financial gains, to the detriment and at the expense of Plaintiffs and the Class.

67. As a proximate result of Defendants' unlawful acts and conduct, as complained of herein, Defendants received profits or other benefits which have been unjustly retained at the expense of Plaintiffs and members of the Class.

68. Plaintiffs, on behalf of themselves and all others similarly situated, are entitled to, and seek, an order in equity enjoining Defendants from engaging in the wrongful acts or practices complained of herein, and disgorging all profits, benefits, and other compensation obtained by Defendants, and each of them, for said wrongful acts and practices.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request of this Court the following relief, on behalf of themselves and the Plaintiff Class:

1. For an order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiffs and their counsel to represent Plaintiffs and the Class;

2. For injunctive relief as pleaded or as the Court may deem proper;

3. For compensatory damages, general damages, restitution and/or rescission as appropriate against Defendants in favor of Plaintiffs and all members of the Class, according to proof;

4. For punitive and exemplary damages, according to proof;

5. For disgorgement of all profits obtained by Defendants as a result of the unlawful, unfair, and/or fraudulent conduct alleged herein, according to proof;

6. For prejudgment interest at the maximum legal rate;

7. For an order awarding Plaintiffs and the Class attorneys' fees and costs of suit; and

8. All such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

DATED: November 23, 2005

Respectfully submitted,

**CADDELL & CHAPMAN, P.C.**

By: ______________________

Michael A. Caddell
Tex. Bar No. 03576700
Fed. Id. No. 7426
CADDELL & CHAPMAN, P.C.
1331 Lamar, Suite 1070
Houston, Texas 77010
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Attorney-in-Charge for Individual and Representative Plaintiffs David Richardson and Brad Thompson

**Of Counsel:**
Cynthia B. Chapman
Greg K. Evans
James M. Juranek
CADDELL & CHAPMAN, P.C.
1331 Lamar, Suite 1070
Houston, Texas 77010
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Elizabeth C. Pritzker
Daniel C. Girard
Jonathan K. Levine
Sheri L. Kelly
GIRARD GIBBS & De BARTOLOMEO LLP
601 California Street, Suite 1400
San Francisco, California 94104
Telephone: (415) 981 4800
Facsimile: (415) 981 4846

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
DAVID RICHARDSON, and BRAD THOMPSON, on behalf of themselves and all others similarly situated

**(b)** County of Residence of First Listed Plaintiff ________
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**
AMERICAN HOME SHIELD OF TEXAS, INC., a Texas Corporation; AMERICAN HOME SHIELD CORPORATION, a Delaware Corporation; and THE SERVICEMASTER COMPANY, a Delaware Corporation

County of Residence of First Listed ________
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

United States Courts
Southern District of Texas
FILED
NOV 23 2005
Michael N. Milby, Clerk

RS

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
CADDELL & CHAPMAN, P.C.
1331 Lamar, Suite 1070
Houston, TX 77010-3027
(713) 751-0400

Attorneys (If Known)
Michael A. Caddell

H 05 - 4029

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury—Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. § 1332 - Class Action Involving Texas Class Members

**VII. REQUESTED IN COMPLAINT:** ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $** Exceeds $5,000,000 CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ________ DOCKET NUMBER ________

DATE 11/23/05 SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________